# CHARLESTON.

## SMITH v. GOTT, *Adm'r.*

Submitted January 20, 1902.   Decided March 15, 1902.

1. CREDITOR'S BILL—*Equitable Lien—Conveyance.*

   Two sisters, being the joint owners of a tract of two hundred acres of land, married and afterwards partitioned the land by mutual conveyances, their husbands joining in the deeds, but, by inadvertance, the conveyance of the share of one of the sisters was made to her and her husband. The husband having died, his judgment creditors, claiming that he was the owner of an undivided half of the one hundred acres of the land so conveyed, sought to enforce the alleged liens of their judgments thereon and to subject the one half of said land to the satisfaction thereof. *Held:* That the equitable title to the whole of said one hundred acres is owned by the widow of said decedent and that the creditors have no liens upon any part of the same. (p. 145).

2. JUDGMENT CREDITOR—*Lien—Subject to Liability.*

   In the absence of statutory enactments establishing a different rule, a judgment creditor acquires no better right to the estate of the debtor that the debtor himself has when the judgment is recovered. He takes it subject to every liability under which the debtor held it and subject to all the equities which exist in favor of third parties; and the lien of his judgment is limited to the actual interest of the debtor in the land. (p. 145).

3. EQUITABLE OWNER—*Estopple—Creditor's Title.*

   When a wife is the equitable owner of real estate, the legal title to which stands in her husband's name, she is not estopped

from setting up her equitable title against creditors of the husband, unless it appear that with her knowledge credit was extended to the husband on the faith of his apparent ownership of the land. (p. 146).

Appeal from Circuit Court, Mercer County.

Bill by John W. Smith against A. Gott, administrator, and others. Decrees for plaintiff, and defendant Mahala A. Johnson appeals.

*Reversed.*

R. C. McCLAUGHERTY and BERNARD McCLAUGHERTY, for appellant.

DOUGLAS & McGRATH, for appellee.

POFFENBARGER, JUDGE:

Mahala A. Johnston was allowed this appeal from several decrees made and entered by the circuit court of Mercer County in the chancery cause of John W. Smith against A. Gott, administrator, with the will annexed of James D. Johnston, deceased, and several other persons of whom the appellant is one. The object of said suit was to subject the real estate of the said James D. Johnston to the payment of his debts, it being alleged that there is no personal property out of which the judgment of the plaintiff for the sum of two hundred and fifty-seven dollars and ninety-five cents, with interest and cost, against said Johnston, John W. Pennington and Nicholas Pennington, dated September 4, 1893, can be collected. The bill further shows that said James D. Johnston was the owner of a tract of land containing thirty acres and an undivided one-half of another tract of land which was conveyed to him and Mahala A. Johnston, his wife, by Albert Nash and others. This alleged interest of James D. Johnston in the last named tract of land which contains one hundred acres is the matter in controversy on this appeal.

By deed dated July 9, 1866, Robert Hall, commissioner, in the case of James R. Kent against James T. Watson's heirs, conveyed to Mahala Woodall, who afterwards married James D. Johnston, and Frances J. Woodall, sister of Mahala who afterwards married Albert Nash, a tract of land containing two hundred acres, of which the land in controversy here was a part. Long

afterwards and after Mahala Woodall and Frances J. Woodall had married, this two hundred acre tract of land was divided between them and separate deeds were made between the parties. The deed executed by Frances J. Nash and Albert Nash, her husband, is dated February 4, 1882. Instead of conveying Mahala A. Johnston's one-half of this land to her said deed conveyed it to her and her husband. Hence, the claim on the part of the creditors of James D. Johnston that he had title to one-half of the land and its liability for the payment of his debts. In her answer to the bill Mahala A. Johnston sets up these facts and alleges that the making of her husband one of the grantees in the deed for her portion of the land was by inadvertance and mistake and that her husband in fact never had any interest in said tract of land nor owned any portion of it. She claims the whole of the land and denies that any of the creditors of said James D. Johnston have liens upon any of it or any right to sell any portion of it and says that their rights and equities are inferior to hers and should be subordinated to it.

The cause having been referred to a commissioner of the court for various purposes specified in the order, some of which were to ascertain and report what real estate the said James D. Johnston owned at the time of his death, the liens thereon, their amounts and priorities and to whom owing, the commissioner reported that the said James D. Johnston owned one-half of said one hundred acres of land and that the same was assets for the payment of his debts and that the plaintiff and others had judgment liens thereon but that the appellant was entitled to dower therein. This finding of the commissioner was excepted to. The commissioner returned with his report the depositions of Albert Nash and Frances J. Nash, the grantors in said deed, both of whom testified that said tract of land was one-half of said two hundred acres of land and that said two hundred acres had been purchased by and belonged to Mahala A. Johnston (nee Woodall) and Frances J. Nash (nee Woodall), and that they had simply divided the land by mutual agreement and executed the deeds for that purpose and that Mrs. Johnston did not know until long afterwards that her husband had been made a grantee in her deed. The deposition of Albert Nash was excepted to in part and that of Frances J. Nash in its entirety on the ground that she was incompetent. Why she is consid-

ered incompetent does not appear. While she is a sister of the
appellant she has no interest in the matter in controversy. It
also appeared from the will of James D. Johnston that he de-
vised whatever interest he had in said one hundred acres of land
to her stating in the will that the same had been unintention-
ally conveyed to him and without consideration in the partition
of said two hundred acres of land and that the object of the
devise was to restore to her, to whom it belonged, the entire
title to the tract or parcel of land. The plaintiff relied solely
upon the deed and offered no testimony to show that James D.
Johnston had paid anything for the land or that it was not con-
veyed to him by mistake. The court overruled the exception
to the report of the commissioner, confirmed it and decreed a
sale of the land, after having it partitioned and the dower of
the appellant therein assigned to her.

. That the deed conveying to Mahala A. Johnston and James
D. Johnston said one hundred acre tract of land was one of
two deeds executed by the co-tenants of the two hundred acre
tract of land for the purpose of partitioning the same between
them admits of no doubt. It is completely and fully estab-
lished by the record. Prior to the execution of that deed
Franes J. Nash was the owner of an undivided one-half of all
the two hundred acre tract. The deed executed by herself and
her husband purports to pass the legal title of the whole of said
one hundred acres to Mahala A. Johnston and James D. John-
ston, although Frances J. Nash was never the owner of but one-
half of said one hundred acres. The consideration for that deed
was the conveyance by Mahala A. Johnston and her husband of
her undivided one-half of the other one hundred acres to Frances
J. Nash. Under such circumstances it may be gravely doubted
whether any title to any portion of the land passed by this deed
to James D. Johnston. It certainly could have passed nothing
more than the mere legal title to the undivided half of said one
hundred acres leaving the legal and equitable title to one-half
in his wife and leaving in her hands the legal and equitable title
to the other half. But, as Frances J. Nash held the legal title
to but one-half of said one hundred acres and conveyed that
one-half to Mahala A. Johnston and James D. Johnston, it
would seem upon this theory that James D. Johnston thereby
obtained the legal title to only one-fourth of said one hundred
acres. However, as stated, there is grave doubt as to whether

he took any interest in the land, legal or equitable, other than his estate by the curtesy. "In case of a fair and impartial voluntary partition of land, any liens or encumbrances upon the undivided interest of one co-tenant will, as a general rule, be transferred to the portion of the premises set off to that co-, tenant in severality, that portion becoming the primary security; * * * and in case of a valid voluntary partition the right of dower to which the wife of a, co-tenant is entitled is divested from the shares of the other co-tenants and confined to that set apart to her husband." 17 Am. & Eng. Ency. Law 676. These and other principles on the law of partition strongly indicate that no title whatever passed by this deed to James D. Johnston but it is unnecessary to determine here whether it did or not. It is sufficient for the purposes of this case that the whole equitable title remained in Mahala A. Johnston.

It is well settled law in this State that a judgment creditor can acquire no better right to the estate of the debtor than the debtor himself has when the judgment is recovered. He takes it subject to every liability under which the debtor held it and subject to all the equities which existed in favor of third parties and a court of equity will limit the lien of the judgment to the actual interest which the debtor has in the estate. The leading case on this subject is *Snyder* v. *Martin*, 17 W. Va. 276, in which Judges Johnson and Green give it exhaustive consideration, reviewing many authorities, both English and American, Judge Johnson, however, dissenting. *Pack* v. *Hansbarger*, 17 W. Va. 324, in which the opinion of the Court was delivered by Judge Haymond, announces the same principle and the subject is there reviewed and discussed at great length. It is reiterated again in *Snyder* v. *Botkin*, 37 W. Va. 355, in which Judge English delivered the opinion of the Court. See also *Transportation Co.* v. *Swaney*, 48 W. Va. 272, (37 S. E. R. 592) ; *Mercantile Co.* v. *Ellis & Co.*, 48 W. Va. 309, (37 S. E. R. 593) ; *Shipe, Cloud & Co.* v. *Repass*, 28 Grat. 716 ; *Floyd, Trustee,* v. *Hardin,* 28 Grat. 401 ; Freeman on Judgments, s. 357 ; *Brown* v. *Pierce*, 7 Wall. (U. S.) 205 ; *Withers* v. *Carter,* 4 Grat. 407 ; *Biern and Friedman* v. *Ray,* 49 W. Va. 129.

But one question remains undisposed of and that is whether Mrs. Johnston has done anything by which she is estopped from asserting her equitable title to the land against her husband's creditors. Aside from having permitted the deed to be made

to her and her husband, the record contains nothing showing any act on her part in reference to said land. There are no allegations and no evidence of any fraudulent conduct on her part. She made no conveyance to her husband and it is not shown that at the time the deed was made by Frances J. Nash and her husband to Mrs. Johnston and her husband she knew that her husband was improperly made a grantee in the deed. The record discloses nothing except mere silence on her part even if she knew of the mistake at the time the deed was made. That is not enough to extinguish her equitable title nor to estop her from asserting it against her husband's creditors. It involves no representation or act on her part by which they have been mislead to their prejudice. It does not appear that as to them she has been in any situation in which equity and good conscience required her to speak and to assert her title. There is neither allegation nor proof that credit was extended to the husband upon the faith of his apparent ownership of the land. On the contrary it appears that he had other lands upon which his creditors probably relied more than upon this. In _Mercantile Co._ v. _Ellis & Co., supra_, this Court has declared that, "It is well settled that a married woman will not be estopped from claiming title to real estate as against the creditors of her husband where it does not appear that credit was extended to the husband upon the faith of the apparent ownership." That the circumstances of this case do not constitute an estoppel against Mrs. Johnston clearly appears from the principles announced in _Williamson_ v. _Jones_, 43 W. Va. 562, 577, where the question is fully considered and discussed in the opinion of the court delivered by JUDGE BRANNON.

The decrees made and entered in said cause on the 6th day of December, 1898, the 11th day of May, 1899, and the 24th day of February, 1900, in so far as they overrule the exception of Mahala A. Johnston, made on the 4th day of February, 1898, to the commissioner's report and confirm said report wherein it holds that James D. Johnston was the owner of one-half of said one hundred acre tract of land, adjudge and decree that the same is liable for the debts of said James D. Johnston and appoint commissioners to partition the same and assign the appellant dower therein and file the report of said commissioners and confirm the same and decree a sale of a portion of said one hundred acre tract of land to satisfy the debts of James D.

Johnston, deceased, must be reversed. And it appearing that said tract of land belongs in its entirety to the appellant and is not subject to the payment of any of the debts of said James D. Johnston, deceased, the bill of complaint must be dismissed as to said tract of land.

*Reversed.*